**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**TRESSA GATTINELLA and KRISTINA LENGYEL,**
 **individually and on behalf**                                                          **Civil Action No.: 14-CV-5731 (WHP)**
**of all others similarly situated,**
                                                            *Plaintiffs,*


                        *-against-*                                                  **SECOND AMENDED**
                                                                                     **CLASS ACTION COMPLAINT**
                                                                                     **JURY TRIAL DEMANDED**

**MICHAEL KORS (USA), INC.; MICHAEL KORS,**
**L.L.C.; MICHAEL KORS RETAIL, INC.; and**
**MICHAEL KORS STORES, L.L.C.;**

                                                *Defendants*.
-----------------------------------------------------------------------x

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, TRESSA GATTINELLA and KRISTINA LENGYEL ("Plaintiffs"), on behalf

of themselves and all others similarly situated, allege the following based upon personal

knowledge as to allegations regarding Plaintiffs and on information and belief as to other

allegations:

## INTRODUCTION

1.      This is a civil class action seeking monetary damages, restitution, injunctive and

declaratory relief from Defendants, Michael Kors (USA), Inc., Michael Kors, L.L.C., Michael

Kors Retail, Inc. and Michael Kors Stores, L.L.C. (collectively, "Michael Kors") arising from its

deceptive and misleading labeling and marketing of merchandise it sells at its company-owned

Michael Kors Outlet stores ("Kors Outlet").

2.      During the Class Period (defined below), Michael Kors misrepresented the

existence, nature and amount of price discounts on products manufactured exclusively for Kors

Outlet ("Kors Outlet Products") by purporting to offer steep discounts off of fabricated, arbitrary,

and false former prices.

3.      Specifically, Michael Kors represented—on the price tags of its Kors Outlet Products—Manufacturer's Suggested Retail Prices ("MSRPs") that were artificial, arbitrary and did not represent a bona fide price at which Michael Kors formerly sold Kors Outlet Products. Nor were the advertised MSRPs prevailing market retail prices within three months immediately preceding the publication of the advertised former prices, as required by California law.

4.      Having touted a false MSRP, Michael Kors then offered, on the same sales labels, to sell Kors Outlet Products for a price termed "OUR PRICE," which supposedly represented a deep discount off of the false MSRP.

5.      But the MSRPs used by Michael Kors, which represented to consumers the purported former price of Kors Outlet Products, were a sham. In fact, Michael Kors manufactures certain goods for *exclusive sale* at its Kors Outlets, which means that such items were never sold—or even intended to be sold—at the "MSRP" price listed on their labels. Kors Outlet Products were never offered for sale in Michael Kors' non-outlet stores in California, or any other state, or in non-outlet retailers carrying Michael Kors products.

6.      The MSRPs listed on Kors Outlet MSRPs did not represent a former price at all—much less a former price in the preceding three months. They are fictional creations designed to enable Michael Kors' phantom markdowns.

7.      The Federal Trade Commission ("FTC") explicitly describes the fictitious pricing scheme employed at Kors Outlet stores as deceptive:

     (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.

     (i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality,

> for a deceptive comparison in any local or other trade area. For instance, a
> manufacturer may not affix price tickets containing inflated prices as an
> accommodation to particular retailers who intend to use such prices as the
> basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

8.      Similarly, California statutory and regulatory law expressly prohibits false pricing

schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price*

*advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the
> prevailing market price, wholesale if the offer is at wholesale, retail if the offer at
> retail, at the time of publication of such advertisement in the locality wherein the
> advertisement is published.
> *No price shall be advertised as a former price of any advertised thing, unless the
> alleged former price was the prevailing market price as above defined within
> three months next immediately preceding the publication of the advertisement* or
> unless the date when the alleged former price did prevail is clearly, exactly and
> conspicuously stated in the advertisement.

(emphasis added).

9.      The Kors Outlet pricing scheme was prominently displayed on all products

available for sale at Kors Outlet stores in California. To illustrate, the merchandise price tags that

Plaintiffs Gattinella and Lengyel relied on are pictured below:





10.     Upon information and belief, thousands of California consumers were victims of

Michael Kors' deceptive, misleading and unlawful false pricing scheme and thousands more,

including Plaintiffs, will be deceived if the practices continue.

11.     Michael Kors fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs and others similarly situated, the truth about its MSRP prices and advertised price discounts from those supposedly former prices.

12.     Michael Kors' false representations of MSRPs and false representations of purported savings, discounts and bargains are objectively material to a reasonable consumer.

13.     Plaintiffs relied upon such false representations of MSRP prices and discounts when purchasing apparel from a Kors Outlet store in California. Plaintiffs would not have made such purchase, or would not have paid the amount they did, but for Michael Kors' false representations of the former price or MSRP of the items she purchased, as compared with the supposedly discounted "OUR PRICE" at which Michael Kors offered the items for sale.

14.     Plaintiffs, in short, believed the truth of the price tags attached to the products they purchased at Kors Outlet, which expressly told them that they were getting a terrific bargain on their purchases. In fact, they were not getting a bargain at all.

15.     Through its false and deceptive marketing, advertising and pricing scheme, Michael Kors violated (and continues to violate) California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Michael Kors violated (and continues to violate) California's *Business & Professions Code* §§ 17200, *et seq.* (the "UCL"), California's *Business and Professions Code* §§ 17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, *Civil Code* §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1).

16.     Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and other equitable remedies, including an injunction under the UCL, FAL and CLRA.

**PARTIES**

17.     Plaintiff Tressa Gattinella is an individual who is a citizen of the City of Santa Barbara, County of Santa Barbara, State of California. In reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, Ms. Gattinella purchased one pair of Side Anklez White jeans, Size 0, Style JH39B37TK6, from the Kors Outlet located in Camarillo, California on July 5, 2014, and as detailed herein, was damaged as a result thereof.

18.     Plaintiff Kristina Lengyel is an individual who is a citizen of the City of Reseda, County of Los Angeles, State of California. In reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, Ms. Lengyel purchased one Fulton Chain Large Shoulder Tote, Leather, Style 35T3GFHE3L, from the Kors Outlet located in Barstow, California on July 12, 2014, and as detailed herein, was damaged as a result thereof

19.     Defendant Michael Kors (USA), Inc., operates as a subsidiary of Michael Kors (USA) Holdings, Inc., and is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 11 West 42nd Street, New York, New York 10036.

20.     Defendant Michael Kors, L.L.C. is a limited liability corporation duly organized and existing under the laws of the State of Delaware, with its principal place at 11 West 42nd Street, New York, New York 10036.

21.     Defendant Michael Kors Stores, L.L.C., is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 11 West 42nd Street, New York, New York 10036.

22.     Defendant Michael Kors Retail, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

23.     Defendants operate 13 Kors Outlet stores in California.

## JURISDICTION AND VENUE

24.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class is a citizen of a different state than Michael Kors.

25.     The Southern District of New York has personal jurisdiction over Michael Kors because Michael Kors is a corporation or other business entity with its principal place of business at 11 West 42nd Street, County of New York, City of New York 10036.

26.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Michael Kors' principal place of business is found within this District, and a substantial part of the events giving rise to Plaintiffs' claims arose here, including the creation of the scheme alleged in this Complaint.

## FACTUAL ALLEGATIONS

27.     Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited July 11, 2014).

28.     However, in an effort to increase profits, major retailers such as Michael Kors have, without notice to consumers, begun using company-owned "outlet" stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores.

29.     In California, such "outlet" stores are located in purpose-built malls touted as "outlets," or "premium outlets." For example, Plaintiff Gattinella purchased her Kors Outlet Products at the Premium Outlets in Camarillo and Plaintiff Lengyel purchased her Kors Outlet Products at the Tanger Outlets in Barstow. The very term "outlet" conveys to reasonable consumers that products are comprised of merchandise formerly offered for sale at full-price retail locations. The location of Kors Outlets in "outlet" malls deceives reasonable consumers into believing they are receiving true "outlet" merchandize, when they are not.

30.     Instead, retailers like Kors Outlet create the illusion of traditional outlet discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false prices. In short, outlet stores such as Kors Outlet are using false and fraudulent price comparison tactics. *See http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* (last visited July 11, 2014).

31.     The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Kors Outlet stores and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See*

*http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers* (last visited July 3, 2014).

32.     This is precisely the practice used by Michael Kors.

### Plaintiffs' Purchases

33.     On July 5, 2014, Plaintiff Gattinella entered the Kors Outlet located in Camarillo, California. She observed that merchandise was advertised with price tags that represented a MSRP price directly on top of a significantly reduced OUR PRICE. Enticed by the idea of paying significantly less than the MSRP charged outside of Kors Outlets, Plaintiff Gattinella was induced to purchase one pair of Side Anklez White jeans, Size 0, Style JH39B37TK6 with a MSRP of $120.00, OUR PRICE of $99.99 which was then priced at $79.99.

34.     By purchasing the jeans for the OUR PRICE of $79.99 instead of the MSRP price of $120.00, Plaintiff Gattinella was led to believe that she saved 33% on her purchase. In reality, Michael Kors never intended, nor did they ever, sell the jeans at the represented MSRP price. Thus Plaintiff Gattinella was deceived by the false price comparison into making a full retail purchase with no discount.

35.     On July 12, 2014, Plaintiff Lengyel entered the Kors Outlet located in Barstow, California. She observed that merchandise was advertised with price tags that represented a MSRP price directly on top of a significantly reduced OUR PRICE. Enticed by the idea of paying significantly less than the MSRP charged outside of Kors Outlets, Plaintiff Lengyel was induced to purchase one Fulton Chain Large Shoulder Tote, Leather, Style 35T3GFHE3L with a MSRP of $398.00, OUR PRICE of $349.00 which was then priced at the register at $219.00.

36.     By purchasing the jeans for the OUR PRICE of $219.00 instead of the MSRP price of $398.00, Plaintiff Lengyel was led to believe that she saved 45% on her purchase. In reality, Michael Kors never intended, nor did they ever, sell the jeans at the represented MSRP

price. Thus Plaintiff Lengyel was deceived by the false price comparison into making a full retail purchase with no discount

37.     Plaintiffs Gattinella's and Lengyel's and class members' reliance on Defendants' false price comparison advertising was reasonable. In fact, empirical marketing studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation,… or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?,* Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

38.     Despite the MSRP/OUR PRICE Scheme used at Kors Outlets, Plaintiffs would purchase Kors Outlet Products in the future from Kors Outlet stores and/or other retail establishments, if product labels accurately reflect "former" prices and discounts. Currently, however, Plaintiffs and California consumers have no realistic way to know which—if any—of Michael Kors' label price comparisons are not false or deceptive. If the Court were to issue an injunction ordering Michael Kors to comply with California's comparative price advertising laws, and prohibiting Michael Kors' use of the deceptive practices discussed herein, Plaintiffs would likely shop for Kors Outlet Products again in the near future at Kors Outlets.

## CLASS ALLEGATIONS

39.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

40.     Plaintiffs bring this action on behalf of themselves and the members of the proposed Class under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All individuals in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased apparel from a Kors Outlet store.

41.     Excluded from the Class are Michael Kors, its parents, subsidiaries, affiliates, officers and directors, any entity in which Michael Kors has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

42.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Michael Kors' records.

43.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (a) Whether, during the Class Period, Michael Kors used false price representations and falsely advertised price discounts on its merchandise sold at Kors Outlet stores;

> (b) Whether, during the Class Period, the MSRP prices advertised by Michael Kors were the prevailing market prices for the respective merchandise sold at Kors Outlet stores during the three month periods preceding the dissemination and/or publication of the advertised former prices;

> (c) Whether Michael Kors' use of false or deceptive price advertising constituted false advertising under California Law;

(d) Whether Michael Kors engaged in unfair, unlawful and/or fraudulent business practices under California law;

(e) Whether Michael Kors misrepresented and/or failed to disclose material facts about its product pricing and discounts.

(f) Whether Michael Kors has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(g) Whether Michael Kors' conduct, as alleged herein, was intentional and knowing;

(h) Whether Class members are entitled to damages and/or restitution, and in what amount;

(i) Whether Michael Kors is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(j) Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

44.     Plaintiffs' claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Kors Outlet that falsely conveyed a MSRP price and a fictitious discount. Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

45.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages

sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Michael Kors' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Michael Kors. For example, one court might enjoin Michael Kors from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

48.     The conduct of Michael Kors is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, the systematic policies and practices of Michael Kors make declaratory relief with respect to the Michael Kors California Subclass as a whole appropriate.

## <u>COUNT I</u>
### (Violation of the "Unfair" Prong of the UCL)

49.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

50.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business & Professions Code* § 17200.

51.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

52.     Michael Kors has violated the "unfair" prong of the UCL by representing a false MSRP price and corresponding OUR PRICE for goods exclusively manufactured for sale at Kors Outlet stores. As a result, the inflated MSRP and corresponding OUR PRICE was nothing more than a false, misleading and deceptive illusion of a discount.

53.     These acts and practices are unfair because they caused Plaintiffs, and are likely to cause consumers, to falsely believe that Kors Outlet is offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiffs, to buy such products, which they otherwise would not have purchased.

54.     The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Michael Kors for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Michael Kors engage in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

55.     Through its unfair acts and practices, Michael Kors has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Michael Kors to restore this money to Plaintiffs and all Class members, and to enjoin Michael Kors from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT II**
**(Violation of the "Fraudulent" Prong of the UCL)**

56.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

58.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

59.     Kors Outlet labels and advertising materials concerning false former prices were fraudulent within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive members of the class, into believing that Michael Kors was offering value, discounts or bargains at Kors Outlet stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

60.     Michael Kors deceived consumers into believing that it was offering value, discounts or bargains at Kors Outlet stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

61.     As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiffs, to buy such products from Kors Outlet stores, which they otherwise would not have purchased.

62.     Michael Kors' acts and practices as described herein have deceived Plaintiffs and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase merchandise from a Kors Outlet store, Plaintiffs relied on Michael Kors' misleading and deceptive representations regarding its MSRP and OUR PRICE. Each of these factors played

14

a substantial role in Plaintiffs' decisions to purchase those products, and Plaintiffs would not have purchased those items in the absence of Michael Kors' misrepresentations. Accordingly, Plaintiffs suffered monetary loss as a direct result of Michael Kors' pricing practices described herein.

63.     As a result of the conduct described above, Michael Kors has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Michael Kors has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

64.     Through its unfair acts and practices, Michael Kors has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Michael Kors to restore this money to Plaintiffs and all Class members, and to enjoin Michael Kors from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III
### (Violation of the "Unlawful" Prong of the UCL)

65.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business & Professions Code* § 17200.

67.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

68.     California statutory and regulatory law also expressly prohibits false former pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

69.     *Civil Code* § 1770, subsection (a)(9), prohibits a business from "[a]dveritsing goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

70.     Michael Kors also violated and continues to violate *Business & Professions Code* § 17501, and *Civil Code* § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

71.     The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established Guidelines which prohibit false pricing schemes, similar to Michael Kors' MSRP/OUR PRICE Scheme in material respects, as deceptive practices that would violate the FTCA:

> (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people

will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.

(i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

72.     Michael Kors' use of and reference to a materially false MSRP price in connection with its marketing and advertisements concerning the merchandise sold at Kors Outlet stores violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

73.     As a result of the conduct described above, Michael Kors has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Michael Kors has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

74.     Through its unlawful acts and practices, Michael Kors has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Michael Kors to restore this money to Plaintiffs and all Class members, and to enjoin Michael Kors from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT IV**
**(Violation of the California False Advertising Law,**
**California *Business & Professions Code* Sections 17500, *et seq.*)**

75.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     California's *Business and Professions Code* §§ 17500, *et seq.* prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

77.     Michael Kors' practice of advertising MSRP prices on exclusive, made for Kors Outlet merchandise, which were materially greater than the actual prices of those products was an unfair, deceptive and misleading advertising practice because it gave the false impression that the products sold at Kors Outlet stores were regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were. In fact, the exclusive, made for Kors Outlet merchandise did not have a prevailing market price anywhere close to the MSRP price advertised because the merchandise was always sold under the OUR PRICE or discounted further from the OUR PRICE when placed on sale at the Kors Outlets.

78.     Through its unfair acts and practices, Michael Kors has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Michael Kors to restore this money to Plaintiffs and all Class members, and to enjoin Michael Kors from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT V**
**(Violation of the Consumers Legal Remedies Act,**
**California *Civil Code* Sections 1750, *et seq.*)**

79.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.     This cause of action is brought pursuant to the CLRA.

18

81.     Plaintiffs and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

82.     Michael Kors' selling of goods manufactured exclusively for sale at Kors Outlets to Plaintiffs and the Class were "transactions" within the meaning of California *Civil Code* § 1761(e). The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code §1761(a).

83.     As described herein, Michael Kors violated the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated labeled MSRP prices. Such a pricing scheme is in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

84.     Plaintiffs relied on Michael Kors' false representations in deciding to purchase goods at Kors Outlet. Plaintiffs would not have purchased such items absent Michael Kors' unlawful conduct.

85.     On July 25, 2014, counsel for Plaintiffs provided proper notice of their intent to pursue claims under the CLRA and an opportunity to cure to Defendants via certified mail to their principal place of business at 11 West 42nd Street, County of New York, City of New York 10036. Counsel for Defendants acknowledged receipt of the notice and rejected the opportunity to cure by letter dated August 4, 2014.

86.     Plaintiffs request this Court enjoin Michael Kors from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future and to order restitution to Plaintiffs and each member of the proposed class. Otherwise, Plaintiffs, the Class and members

of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class demand a jury trial on all claims so triable and judgment against Defendants, Michael Kors (USA), Inc., Michael Kors, L.L.C., Michael Kors Retail, Inc. and Michael Kors Stores, L.L.C., as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

B.      A judgment awarding Plaintiffs and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Michael Kors obtained from Plaintiffs and the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C.      An order enjoining Defendant from continuing to violate the UCL, False Advertising Law and CLRA as described herein.

D.      A judgment awarding Plaintiffs their costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-judgment interest; and

E.      Such other and further relief as may be deemed necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all triable issues.


Dated: December 24, 2014                    **THE LAW OFFICES OF WAYNE KREGER**

                                            By:___/s/ *Wayne S. Kreger*_____
                                            Wayne S. Kreger, Esq.
                                            **LAW OFFICES OF WAYNE KREGER**
                                            SDNY Bar No.: WK2868

303 Fifth Avenue, Suite 1201
New York, New York 10016
Phone: (212) 956-2136
Fax:     (212) 956-2137
E-Mail: wayne@kregerlaw.com


Jason Alperstein
SDNY Bar No.: JA1209
alperstein@kolawyers.com
Jeffrey M. Ostrow (*admitted pro hac vice*)
Florida Bar No.: 121452
ostrow@kolawyers.com
Scott A. Edelsberg (*admitted pro hac vice*)
Fla. Bar No. 100537
edelsberg@kolawyers.com
**KOPELOWITZ OSTROW P.A.**
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300


Hassan A. Zavareei, Esq. (*admitted pro hac vice*)
D.C. Bar No. 456161
Jeffrey D. Kaliel (*admitted pro hac vice*)
D.C. Bar No. 983578
**TYCKO & ZAVAREEI LLP**
2000 L Street, NW
Suite 808
Washington, DC 20036
(202) 973-0900
(202) 973-0950 (facsimile)
hzavareei@tzlegal.com
jkaliel@tzlegal.com