**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
TRESSA GATTINELLA, and
KRISTIN LENGYEL each individually and on behalf          No. 14 Civ. 5731 (WHP)
of all others similarly situated,

                                      *Plaintiffs,*

                *-against-*


MICHAEL KORS (USA), INC.; MICHAEL KORS,
L.L.C.; MICHAEL KORS RETAIL, INC.; and
MICHAEL KORS STORES, L.L.C.,

                               *Defendants.*
------------------------------------------------------------------------x




**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**<u>OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>**

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION**............................. ……………………………………………1

II.   **STATEMENT OF FACTS** ............................................................................. 3

     A.     Factual Background ............................................................. 3

          1.     Procedural History ........................................................ 4

          2.     Class Counsel's Investigation ................................... 6

     B.     Summary of the Settlement Terms ...................................... 6

          1.     The Settlement Class.................................................... 6

          2.     Relief for the Benefit of the Settlement Class .................. 7

          3.     The Notice Program .................................................... 7

              a.     The Published Notice Program .................................... 8

              b.     Long-Form Notice ...................................................... 9

              c.     The Settlement Website and Toll-Free Hotline ............ 9

          4.     Settlement and Notice Administration........................ 10

          5.     Claims Process .......................................................... 11

          6.     Allocation of Net Settlement Fund ........................... 12

          7.     Disposition of Residual Funds afer Distribution ..................... 14

          8.     Class Release ............................................................ 14

          9.     Settlement Termination.............................................. 15

          10.     Class Representatives' Service Awards................................ 15

          11.     Attorneys' Fees and Costs ........................................ 15

III.   **ARGUMENT** ............................................................................................. 16

     A.     The Legal Standard for Preliminary Approval ................................ 16

     B.     This Settlement Satisfies the Criteria for Preliminary Approval ....................... 18

          1.     This Settlement is the product of Good Faith, Informed and Arm's Length Negotiations.................................................... 18

          2.     The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable ......................................... 19

              a.     Complexity, Expense, and Likely Duration of the Litigation...... 20

              b.     The Reaction of the Class to the Settlement ................................ 21

              c.     The Stage of the Proceedings and Amount of Discovery ............ 21

              d.     The Risks of Establishing Liability and Damages ...................... 22

i

e.       The Risks of Maintaining the Class Action through Trial ........... 24

f.       The Ability of Defendant to Withstand a Greater Judgment ....... 25

g.       The Range of Reasonableness of the Settlement Fund in
         Light of the Best Possible Recovery and the Attendant Risk
         of Litigation ................................................................................... 25

C.     Certification of the Settlement Class is Appropriate ........................................... 26

1.       Numerosity ........................................................................................... 27

2.       Commonality ........................................................................................ 28

3.       Typicality ............................................................................................. 29

4.       Adequacy ............................................................................................. 30

5.       Predominance ....................................................................................... 30

6.       Superiority ............................................................................................ 31

D.     Appointment of Class Counsel ............................................................................. 32

E.     Adequacy of the Proposed Notice ........................................................................ 33

F.     The Plan of Allocation .......................................................................................... 34

G.     The Court Should Schedule a Final Approval Hearing ....................................... 35

IV.    **CONCLUSION** ........................................................................................................... 36

# INDEX OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Air Line Pilots Assoc. v. American Nat'l Bank and Trust Co. of Chicago*,
   156 B.R. 414 (S.D.N.Y. 1993)...................................................................................25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................31, 32

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)................................................................................................30

*Ballinger v. Advance Magazine Publrs., Inc.*,
   No. 13 Civ. 4036 (HBP),
      2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ....................................22, 25

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988)......................................................................................21

*Bolanos v. Norweigen Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) .....................................................................................29

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 1010)..............................................................................................31

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..............................................................................................16

*Clark v. Ecolab, Inc.*,
   Nos. 07 Civ. 8623 (PAC) *et al.*,
      2009 U.S. Dist., LEXIS 108736 (S.D.N.Y. Nov. 27, 2009) ...............................17

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 2005)................................................................................................27

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) .....................................................................................30

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)................................................................................................25

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..............................................................................................26

*Ebin v. Kangadis Food, Inc.*,
   297 F.R.D. 561 (S.D.N.Y. Feb 24, 2014) .......................................................................24

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...............................................................................25, 28

*Hernandez v. Merrill Lynch & Co, Inc.*,
   No. 11 Civ. 8472 (KBF)(DCF),
      2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012)...............................17

*Inglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) .........................................................................31

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................ *passim*

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL No. 1409, M 21-95,
  2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ............................................19, 20

*In re Gache*,
  164 F.3d 617 (2d Cir. 1988)................................................................................25

*In re Initial Pub. Offering Sec. Litig*,
  226 F.D.R. 186 (S.D.N.Y. 2005) ..........................................................................18

*In re Med. X-Ray*,
  No. 93 Civ. 5904,
  1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)....................................................26

*In re Michael Milken Sec. Lit.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................25

*In re Nasdaq Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y.) ..................................................................................27

*In re Nasdaq Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................19

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617,
  2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) .......................................... *passim*

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ......................................................................33, 34

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................24

*In re Traffic Executive Ass'n*,
  627 F.2d 631 (2d Cir. 1980)................................................................................17

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)................................................................................24

*In re Warner Chilcott Ltd. Secs. Litig.*,
  No. 06 Civ. 11515 (WHP),
  2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008)......................................... *passim*

*In re Warner Chilcott Ltd. Secs. Litig.*,
  No. 06 Civ. 11515 (WHP),
  2009 U.S. Dist. LEXIS 58843, (S.D.N.Y. July 10, 2009) ..............................................34

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)................................................................................16

*Klein v. PDG Remediation, Inc.*,
   No. 95 Civ. 4954,
     1999 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 28, 1999).......................................................21

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972).......................................................27

*Levitt v. J.P. Morgan Sec., Inc.*,
   710 F.3d 454 (2d Cir. 2013).......................................................27

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169, 178 (S.D.N.Y. 2014) ........................................................... *passim*

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................34

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).......................................................27, 29

*Martens v. Smith Barney, Inc.*,
   81 F.R.D. 243 (S.D.N.Y. 1998) .......................................................22

*McBean v. City of N.Y.*,
   228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................31

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009).......................................................16, 17

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002).......................................................31

*Park v. Thomson Corp.*,
   No. 05 Civ. 2931 (WHP),
     2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) ...............................18, 19, 23, 24

*Plummer v. Chemical Bank*,
   668 F.2d 654 (2d Cir. 1982).......................................................21

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).......................................................29

*Spagnola v. Chubb Corp.*,
   264 F.R.D. 76 (S.D.N.Y. 2010) .......................................................27

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) .......................................................28

*United States v. Glens Falls Newspapers, Inc.*,
   160 F.3d 853 (2d Cir. 1998).......................................................20

*Wal-Mart Stores Inc. v Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011) .............................................28

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................16

## **Court Rules**

Fed. R. Civ. P. Rule 23(a) ................................................................................................26

Fed. R. Civ. P. Rule 23(a)(1) ..........................................................................................27

Fed. R. Civ. P. Rule 23(a)(2) ..........................................................................................28

Fed. R. Civ. P. Rule 23(b) ...............................................................................................26

Fed. R. Civ. P. Rule 23(b)(3) .......................................................6, 27, 30, 31, 32, 36

Fed. R. Civ. P. Rule 23(c)(1)(B) .....................................................................................32

Fed. R. Civ. P. Rule 23(c)(2)(B) .....................................................................................34

Fed. R. Civ. P. Rule 23(c)(3) ..........................................................................................34

Fed. R. Civ. P. Rule 23(e) ...............................................................................................35

Fed. R. Civ. P. Rule 23(e)(1)(B) .....................................................................................33

Fed. R. Civ. P. Rule 23(g) ...............................................................................................32

Fed. R. Civ. P. Rule 23(g)(1)(A) .....................................................................................33

## **Other Authorities**

1 *Newberg on Class Actions* 3.05, at 3-25 (3d ed. 1992) .............................................28

4 Alba Conte & Herbert B. Newberg, *Newberg on Class
    Actions* § 11:25, at 87 (4th ed. 2002) ....................................................................16

## I.   __INTRODUCTION__

Plaintiffs, Tressa Gattinella and Kristin Lengyel (collectively "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully move for Preliminary Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as *Exhibit A*, which will resolve all claims against Michael Kors (USA), Inc., Michael Kors, L.L.C., Michael Kors Retail, Inc., and Michael Kors Stores, L.L.C. ("collectively "Michael Kors") in the above-captioned action ("Action").[1]   The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class, and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.   Indeed, given the significant risks inherent in this Action, the Settlement – which provides for Michael Kors' agreement to pay $4,875,000.00 and significant practices changes – is a significant result.

Plaintiffs sued on behalf of themselves and all others similarly situated seeking monetary damages, restitution and declaratory relief based on Michael Kors alleged deceptive and misleading labeling and marketing of merchandise sold at its company-owned Michael Kors outlet stores.   Specifically, the manner in which Michael Kors labels its price tags deceives customers into believing they are purchasing products that were formerly sold or offered at a higher price at main line retail stores and are now significantly cheaper at the outlet stores.

The Settlement satisfies all Second Circuit criteria for settlement approval.   One of the keystones of this Settlement is that Michael Kors has agreed for all of its United States outlet stores to cease the very practice at the heart of Plaintiffs' Complaint and to modify its price tags, as well as provide in-store displays with explanations of pricing terms, making it easier for customers to understand the value of what they are purchasing.   A second hallmark is that the

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in Section II of the Settlement Agreement and Release.

process to claim a cash benefit is streamlined as compared to most claims procedures and the threshold for eligibility is reasonably low, thereby making it easy for Settlement Class Members throughout the United States to participate in the Settlement and receive a portion of the Net Settlement Fund.   To participate, claimants need only submit online or by mail a Claim Verification Form verifying that they purchased Michael Kors Outlet Products during the Class Period.   Claimants need not submit proof of purchase to receive a share of the Net Settlement Fund.   However, those claimants that do have receipts may be entitled to receive a higher distribution depending upon the amount of their purchases.   Upon confirmation by the Notice and Settlement Administrator that Claim Verification Forms are complete, checks will automatically be sent to each Settlement Class Member.   The claims process and plan of allocation is extremely fair and adequate.

Another testament to the reasonableness and fairness of the Settlement is the amount of the Settlement Fund.   Class Counsel negotiated a $4.875 million cash payment for the benefit of the Settlement Class.   The recovery falls well within the range of reasonableness given the significant risks inherent with litigating false advertising outlet store cases.   In other similar cases, courts have granted motions to dismiss and have otherwise refused to enter restitutionary damages awards.   Cases against outlet stores alleging false product pricing are a relatively new phenomenon, meaning there is no extensive body of case law governing applicable damages models.   In the face of these risks and others discussed below, this Settlement is eminently fair and reasonable and merits Preliminary Approval.

Therefore, as detailed below, Plaintiffs respectfully request that the Court take the following initial steps in the Settlement approval process:   (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule

23 of the Federal Rules of Civil Procedure; (3) appoint Tressa Gattinella and Kristin Lengyel as class representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached to the Agreement as *Exhibits 1* and *2*; (5) approve the claims procedure and the Claim Verification Form attached to the Agreement as *Exhibit 3*; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) stay the Action against Michael Kors pending Final Approval of the Settlement; (8) appoint as Class Counsel the law firms listed in paragraph 7 of the Agreement; and (9) schedule a Final Approval Hearing to occur no sooner than the week of November 2, 2015 (if convenient for the Court).

## II.    STATEMENT OF FACTS

### A.    Factual Background.

This case alleges Michael Kors falsely and deceptively labels and markets merchandise it sells at its company-owned Michael Kors outlet stores ("Kors Outlet").  Plaintiffs are California consumers, who, in reliance on Michael Kors' misrepresentations regarding the existence, nature and amount of price discounts on products manufactured exclusively for Kors Outlet ("Kors Outlet Products"), purchased Kors Outlet Products.  Plaintiffs allege that Michael Kors represented—on the price tags of its Kors Outlet Products—Manufacturer's Suggested Retail Prices ("MSRPs") that were artificial, arbitrary and did not represent a bona fide price at which Michael Kors formerly sold the Michael Kors Outlet Products.  Having touted a false MSRP, Michael Kors then offered, on the same sales labels, to sell Kors Outlet Products for a price termed "OUR PRICE," which supposedly represented a deep discount off of the false MSRP. However, because the Michael Kors Outlet Products were manufactured exclusively for sale at Kors Outlets, those products were never sold—or even intended to be sold—at the "MSRP" price listed on their labels.  Thus, the "OUR PRICE" represented on Kors Outlet Products' price

tags was nothing more than a false, misleading and deceptive illusion of a discount.  Plaintiffs allege that Michael Kors' practices violate California's False Advertising Law, Unfair Competition Law, and Consumers Legal Remedies Act.

There have been a number of similar cases filed in New York and California against prominent retailers on behalf of California consumers alleging deceptive marketing practices at retail outlets and factory stores.  As Plaintiffs do here, the plaintiffs in those cases allege claims for false advertising, unfair competition and violation of California's Consumers Legal Remedies Act based on the assertion that they were led to believe that the products they purchased at outlet stores were steeply discounted from their "suggested" retail prices or "compared to" prices when, in reality, those products were never intended to be sold at the traditional retail stores, were created exclusively for the outlet stores, and were of inferior quality.  Several of those putative class actions have been dismissed, and the remaining pending actions are still at their infancy.  This case is believed to be the only outlet class action that has been settled to date.  Class Counsel are counsel of record for plaintiffs in many of those similar actions.

### 1.    Procedural History.

On July 25, 2014, Plaintiff Gattinella filed a Class Action Complaint in this Court seeking monetary damages, restitution and declaratory relief from Michael Kors.  DE # 1.  Thereafter, on September 2, 2014, Plaintiff Gattinella filed her First Amended Complaint.  DE # 10.  On September 25, 2014, Michael Kors filed its Answer.  DE # 25.  Michael Kors defended its conduct by, *inter alia*, arguing that the "suggested" retail price on Kors Outlet Products did not constitute a representation as to whether those Products were, in fact, offered for sale at those "suggested" prices, and that it complied with applicable federal and state laws, regulations and rules.  Joint Declaration of Jeffrey M. Ostrow and Hassan A. Zavareei ("Joint Decl.") ¶ 6,

attached hereto as *Exhibit B*.  Furthermore, Michael Kors advanced a medley of other defenses. *See generally* Answer.  DE # 25.  On October 31, 2014, the Parties' counsel appeared before the Court for a Pretrial Conference, after which a Scheduling Order was entered.  DE # 30.  On December 24, 2014, Plaintiff Gattinella filed a Second Amended Complaint adding Plaintiff Lengyel.  DE # 33.  Thereafter, the Parties engaged in formal written discovery, including document requests, interrogatories and requests for admission.  Joint Decl. ¶ 7.

Beginning in early 2015, the Parties engaged in preliminary settlement discussions, which involved Michael Kors producing informal damage related data and information.  Joint Decl. ¶ 8.  On February 11, 2015, the Parties conducted an informal settlement conference in New York.  *Id.*  On April 2, 2015, the Parties participated in a formal mediation session with Professor Eric Green in New York City.  *Id.*  In advance of the mediation, and aside from responding to Plaintiffs' formal written discovery, Michael Kors produced specific additional data and class related information. This data and class related information included nationwide sales numbers for Kors Outlet Products, internal procedures related to setting prices for Kors Outlet Products and a description of customer databases maintained by Michael Kors.  *Id.*

After the mediation, the Parties reached an agreement in principle and signed a term sheet, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiffs and the Settlement Class Members in exchange for Michael Kors' Agreement to; (a) pay the sum of Four Million Eight Hundred Seventy-Five Thousand Dollars ($4,875,000.00) to create a common fund for the benefit of the Settlement Class; and (b) modify its sales practices to change the manner and method in which it markets and labels various price tags for items in its outlet stores.  Joint Decl. ¶ 9.

On April 8, 2015, the Parties filed a Notice of Settlement with the Court DE # 37, and on June 12, 2015, the Parties fully executed the Agreement.  Joint Decl. ¶ 10.

       **2.**       **Class Counsel's Investigation.**

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Michael Kors.  Joint Decl. ¶ 11.  Prior to filing suit, Class Counsel visited outlet stores, spoke to Michael Kors employees, and interviewed a number of customers and potential plaintiffs to gather information about Michael Kors' conduct and its impact upon consumers.  *Id.* This information was essential to Class Counsel's ability to understand the nature of the conduct, the language on the price tags at issue, and potential relief and remedies.  *Id.*

Class Counsel expended significant resources researching and developing the legal claims at issue.  Joint Decl. ¶ 12.  After filing suit, Class Counsel also crafted and served document requests, interrogatories and requests for admission with an eye toward class certification, summary judgment and trial.  *Id.*  Additionally, Class Counsel spent an enormous amount of time researching, reviewing and analyzing Michael Kors' outlet revenue and industry trends relating to pricing.  *Id.*  Prior to Settlement, Class Counsel and Plaintiffs' expert analyzed the discovery and other data provided by Michael Kors, and researched case law, to create damage models and to formulate a range of alleged damages in this case.  *Id.*

      **B.**      <u>**Summary of the Settlement Terms.**</u>

The Settlement's terms are detailed in the Agreement.  The following is a summary of the material terms of the Settlement.

       **1.**       **The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All consumers who purchased Michael Kors Outlet Products from a Michael Kors Outlet Store during the Class Period.

Agreement ¶ 28.  Class Period means the period from July 25, 2010, through, and including, July 25, 2014.  *Id*. ¶ 8.

### 2.      Relief for the Benefit of the Settlement Class.

The Settlement consists of a $4,875,000 million cash Settlement Fund to be distributed to Settlement Class Members.  Agreement ¶ 33.  The Settlement requires Michael Kors to deposit into an Escrow Account the full amount of the Settlement within 5 days of Preliminary Approval.  *Id*.  The Settlement Fund will be used to pay the costs of class Notice and Settlement Administration, attorneys' fees, costs and expenses, the class representatives' Service Awards sought in this case, and, most importantly, the distributions to Settlement Class Members. Agreement ¶ 36.

Additionally, within 6 months of Final Approval, unless Michael Kors elects to do it sooner, Michael Kors agrees to modify its sales practices to change the manner and method of how it presents pricing on price tags of Michael Kors Outlet Products.  Specifically, Michael Kors shall: (a) cease the use of the acronym "MSRP" (Manufacturer Suggested Retail Prices) and will replace it with the word "Value" on price tags of items sold at Michael Kors Outlet Stores; and (b) display signage in the Michael Kors Outlet Stores that explains the meaning of "Value" to customers.  Agreement ¶¶ 37-38.

### 3.      The Notice Program.

The Notice Program in this Settlement is designed to provide the best notice practicable. Joint Decl. ¶ 15.  The Notice Program is reasonably calculated under the circumstances to apprise members of the Settlement Class, among other information: a description of the material terms of the Settlement, the date by which persons in the Settlement Class may exclude

themselves from or "opt-out" of the Settlement Class, the date by which persons in the Settlement Class may object to the Settlement, the date upon which the Final Approval Hearing will occur, and the address of the Settlement Website at which persons in the Settlement Class may access the Agreement and other related documents and information.   Agreement ¶ 45-52 and Exs. 1-2 thereto.   The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.   Joint Decl. ¶ 15.   The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.   *Id.*

The Notice Program is comprised of two parts: (1) publication notice ("Published Notice"); and (2) written long-form notice containing more detail than the Published Notice ("Long Form Notice") that will be available on the Settlement website (www.KorsOutletSettlement.com) and via U.S. mail upon request.   Agreement ¶¶ 49-52.   In addition, Notice will be provided through targeted Internet banner advertising.   Joint Decl. ¶ 16.

### a.      The Published Notice Program.

The Settlement and Notice Administrator shall administer the Published Notice, which shall be comprised of a one-time appropriate sized newspaper advertisements covering the areas in which Michael Kors had Michael Kors Outlet Stores during the Class Period and targeted Internet advertising.   Agreement ¶ 51; Joint Decl. ¶ 16.   The Published Notice shall be completed no later than 90 days before the Final Approval Hearing.   Agreement ¶ 51.

Within 7 days after the date the Settlement and Notice Administrator completes the Published Notice, the Settlement and Notice Administrator shall provide Class Counsel and Michael Kors' Counsel with an affidavit that confirms that the Published Notice was given in accordance with the Preliminary Approval Order.   Agreement ¶ 52.   Class Counsel shall file the

8

affidavit with the Court in conjunction with Plaintiffs' motion for final approval of the Settlement.  *Id.*

### b.        Long-Form Notice

In addition to the information described above, the Long Form notice will also describe the procedure that members of the Settlement Class must follow to opt-out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs.  Agreement ¶¶ 46-47 and Ex. 2 thereto.  All opt-outs must be postmarked during the Opt-Out Period, and any objections must be postmarked no later than the last day of the Opt-Out Period (no later than 45 days prior to the Final Approval Hearing).  Agreement ¶ 20.  For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; a statement confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature.  *Id.* ¶ 47.

### c.        The Settlement Website and Toll-Free Hotline.

The Settlement Administrator will establish a Settlement Website, www.KorsOutletSettlement.com, as a means for members of the Settlement Class to obtain notice of, and information about, the Settlement.  Agreement ¶ 32. The Settlement Website will be established as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program.  *Id.*  The Settlement Website will include hyperlinks to

the Settlement, the Long Form Notice, the order preliminarily approving this Settlement and such other documents as Class Counsel and Michael Kors' Counsel agree to post or that the Court orders posted on the Settlement Website. *Id.* These documents will remain on the Settlement Website at least until Final Approval. *Id.*

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of members of the Settlement who call with or otherwise communicate such inquiries. Agreement ¶ 44(d).

### 4.    Settlement and Notice Administration.

The Settlement and Notice Administrator is Epiq Systems, Inc. ("Epiq"), one of the leading class action settlement administrators in the United States.  Epiq's responsibilities include the following:

a.    Obtain from Michael Kors and Class Counsel a complete and accurate list of all Michael Kors Outlet Stores locations that were in operation during the Class Period;

b.    Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

c.    Establish and maintain the Settlement Website;

d.    Establish and maintain an automated toll-free telephone line for persons in the Settlement Class to call with Settlement-related inquiries, and answer the questions of persons who call with or otherwise communicate such inquiries (except that the Settlement and Notice Administrator shall not give, and shall not be expected to give, legal advice);

e.    Receive and review for completeness the Claim Verification Forms submitted by claimants seeking to be part of the Settlement Class;

f.      Respond to any mailed inquiries from persons in the Settlement Class;

g.      Process all requests for exclusion from persons in the Settlement Class;

h.      Provide weekly reports and a final report to Class Counsel and Michael Kors' Counsel that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date and other pertinent information;

i.      At Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each person in the Settlement Class who timely and properly requested exclusion from the Settlement Class;

j.      Process and transmit payments to Class Members from the Net Settlement Fund;

k.      Perform all tax-related services for the Escrow Account as provided in this Agreement;

l.      Perform the duties of Escrow Agent as described in this Agreement, and any other Settlement–administration-related function at the instruction of Class Counsel and Michael Kors' Counsel; and

m.      Pay invoices, expenses and costs upon approval by Class Counsel and Michael Kors' Counsel, as provided in this Agreement.  Agreement ¶ 44.

        5.      **Claims Process.**

To be eligible to participant in the Settlement as a Settlement Class Member, claimants must submit a Claim Verification Form online or by mail to the Settlement and Notice Administrator.  Agreement ¶ 55.  A copy of the Claim Verification Form is attached as Exhibit 3 to the Agreement.  The Notice Program will direct claimants to the Settlement Website to provide instructions on how to complete and submit the Claim Verification Form.  *Id.*  At the request of a Settlement Class Member, the Settlement and Notice Administrator will send a hard

11

copy of the form to the claimant's address. *Id.* at ¶ 56. The Settlement Class Member shall return the Claim Verification Form to the mailing address identified on the Claim Verification Form, and shall be responsible for the cost of postage to deliver the Claim Verification Form to the Settlement and Notice Administrator. *Id.*

Once the forms are submitted online or by mail, the Settlement and Notice Administrator will be responsible for reviewing the forms for completeness. Agreement ¶ 57. Should a Claim Verification Form be valid and complete, the claimant will be added to the Settlement Class Member list. *Id.* If a Claim Verification Form is invalid or incomplete, the Settlement and Notice Administrator will send written verification to the claimant that the form is rejected. *Id.* The claimant will have one more opportunity to submit a corrected completed form. *Id.*

All Claim Verification Forms, whether the initial or second submission, must be submitted online or postmarked no later than 45 days after the entry of the Final Approval Order ("Claim Verification Form Deadline"). Agreement ¶ 58.

### 6.      Allocation of Net Settlement Fund.

All Settlement Class Members who submit a valid Claim Verification Form ("Valid Class Members") will receive a percentage of the Net Settlement Fund. Agreement ¶ 59. The percentage each Valid Class Member receives will be dependent upon the total number of Valid Class Members, and whether such Valid Class Member is entitled to one, two, three, four or five points, as follows: (a) each Valid Class Member who submits a Claim Verification Form but does not submit a valid receipt evidencing the purchase of Michael Kors Outlet Product(s) during the Class Period shall receive one point; (b) each Valid Class Member who submits one or more valid receipts evidencing the purchase of Michael Kors Outlet Product(s) during the Class Period that total less than $200 will receive two points; (c) each Valid Class Member who submits one

or more valid receipts evidencing the purchase of Michael Kors Outlet Product(s) during the Class Period that total $200 to $499 will receive three points; (d) each Valid Class Member who submits one or more valid receipts evidencing the purchase of Michael Kors Outlet Product(s) during the Class Period that total $500 to $999 will receive four points; and (e) each Valid Class Member who submits one or more valid receipts evidencing the purchase of Michael Kors Outlet Product(s) during the Class Period that total $1,000 or more will receive five points.  *Id.*

Thereafter, each Valid Class Member's percentage will be determined by dividing the number of points he or she receives by the number of total points of all Valid Class Members in order to determine his or her percentage of the Net Settlement Fund.  Agreement ¶ 59.  By way of example, if there are 2000 total Valid Class Members, 400 of whom receive one point, 400 of whom receive two points, 400 of whom receive three points, 400 of whom receive four points, and 400 of whom receive five points, the number of total points would be 6,000, and a Valid Class Member who received five points would receive .00083% (or 5/6000) of the Net Settlement Fund; a Valid Class Member who received four points would receive .00067% (or 4/6000) of the Net Settlement Fund; a Valid Class Member who received three points would receive .00050% (or 3/6000) of the Net Settlement Fund; a Valid Class Member who received two points would receive .00033% (or 2/6000) of the Net Settlement Fund; and a Valid Class Member who received one point would receive .00017% (or 1/6000) of the Net Settlement Fund. *Id.*

Payments will be made by check and distributed by the Settlement and Notice Administrator 30 days after the later of the Claim Verification Form Deadline or the Effective Date.  Agreement ¶ 60.  Checks shall contain an appropriate legend, in a form approved by Class Counsel and Michael Kors' Counsel, to indicate that it is from the Settlement.  *Id.* at ¶ 61.

Checks will be cut and mailed by the Notice and Settlement Administrator, and will be sent to the addresses that the Settlement Class Members provide on the Claim Verification Forms.  *Id*. Checks shall be valid for 180 days.  *Id.*

The amount of the Net Settlement Fund attributable to uncashed checks and checks returned to the Settlement and Notice Administrator shall remain in the Settlement Fund for 1 year from the date that the first distribution check is mailed by the Settlement and Notice Administrator, during which time the Settlement and Notice Administrator shall make a reasonable effort to locate Settlement Class Members whose checks were returned to effectuate delivery of such checks to the Settlement Class Members entitled to them.  Agreement ¶ 62.  The Settlement and Notice Administrator shall make only one attempt to re-mail or re-issue a distribution check.  *Id.*

All costs associated with the process of printing and mailing the checks and any accompanying communication to Settlement Class Members shall be paid out of the Settlement Fund.  Agreement ¶ 63.

### 7.      Disposition of Residual Funds after Distribution.

Within 1 year plus 30 days after the date the Settlement and Notice Administrator mails the first Settlement Class Member payment, if any funds remain in the Settlement Fund, the Parties shall meet and confer regarding the distribution of any remaining funds to (i) an appropriate charitable organization approved by the Court (as a *cy pres* award); (ii) Valid Class Members (as a supplemental distribution); or (iii) a combination thereof.  Agreement ¶ 64.

### 8.      Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Michael Kors from claims relating to the subject matter of the Action.  The detailed release language can be found in Section XIII of the Agreement.

**9.      Settlement Termination.**

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  Agreement ¶ 75.  Michael Kors also has the right to terminate the Settlement if the number of members of the Settlement Class who timely request exclusion from the Settlement Class equals or exceeds an amount agreed upon by the Parties in a separate agreement.  *Id*. at ¶ 76.

**10.      Class Representatives' Service Awards.**

Class Counsel will seek Service Awards of $5,000 for each of the named Plaintiffs. Agreement ¶ 72.  If the Court approves them, the total Service Awards of $10,000, will be approximately 0.2% of the Settlement Fund.  Joint Decl. ¶ 23.  The Service Awards will be paid from the Settlement Fund, and will be in addition to the distributions the Plaintiffs will be entitled to under the terms of the Settlement.  *Id*.  These awards will compensate the representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against Michael Kors.  *Id*.  Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; and (3) participating in conferences with Class Counsel.  *Id*.  In so doing, the Plaintiffs were integral to the case.  *Id.*  Michael Kors does not object to Class Counsel's request for Service Awards for the Class Representatives.

**11.      Attorneys' Fees and Costs.**

Michael Kors will not oppose Class Counsel will request attorneys' fees of up to thirty percent (30%) of the Settlement Fund, as well as reimbursement of costs and expenses incurred in connection with the Action.  Agreement ¶ 68; Joint Decl. ¶ 24.  The Parties negotiated and

reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.  Agreement ¶ 69; Joint Decl. ¶ 24.

III.   **ARGUMENT**

A.   **The Legal Standard for Preliminary Approval.**

"The settlement of complex class action litigation is favored by the Courts."  *In re Warner Chilcott Ltd. Secs. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, *2-3 (S.D.N.Y.  Nov. 20, 2008) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal citation omitted).  *See also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:25, at 87 (4th ed. 2002) ("*Newberg*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  "Although there is a general policy favoring settlement, the court may approve a class action settlement only if it is 'fair, adequate, and reasonable, and not a product of collusion."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 178 (S.D.N.Y. 2014) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to the settlement."  *Lizondro-Garcia*, 300 F.R.D. at 178 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116).

"In assessing procedural fairness, there is a 'presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Lizondro-Garcia*, 300 F.R.D. at 178 (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)) (internal citation omitted).  "In assessing whether a settlement is substantively fair, reasonable, and adequate, courts in this Circuit use the nine-factor test set forth in *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)." *Lizondro-Garcia*, 300 F.R.D. at 178 (citing

*McReynolds*, 588 F.3d at 804).  These factors include:

> (1) The complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in the light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Lizondro-Garcia*, 300 F.R.D. at 178 (citing *McReynolds*, 588 F.3d at 804).

As this Court previously held in *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179

(S.D.N.Y. 2014):

> Preliminary approval is the first step in the settlement of a class action whereby the court "must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 11.25 (4th ed. 2002) (internal quotation omitted). . . .
>
> > Preliminary approval of a settlement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623 (PAC) *et al.*, 2009 U.S. Dist. LEXIS 108736, at *3 (S.D.N.Y. Nov. 27, 2009)) (citing Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (4th ed. 2002)). Nevertheless, courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *Hernandez v. Merrill Lynch & Co, Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2012 U.S. Dist. LEXIS 165771, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits)).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members)). . . .

17

**B.**     <u>This Settlement Satisfies the Criteria for Preliminary Approval</u>.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel, in conjunction with an experienced mediator. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement fits well within the range of reasonableness, such that Preliminary Approval is warranted.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe that the claims asserted are meritorious and that they would prevail if this matter proceeded to trial. Michael Kors argues that Plaintiffs' claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, final appellate review. Joint Decl. ¶ 25.

      **1.**     **This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.**

"Where a settlement is the 'product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation,' the negotiation enjoys a 'presumption of fairness.'" *Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551, at *5-6 (S.D.N.Y. Oct. 22, 2008) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)); *In re Initial Pub. Offering Sec.*

*Litig*, 226 F.D.R. 186, 194 (S.D.N.Y. 2005); *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.   Joint Decl. ¶ 26.   Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  *Id.*   As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in both informal and formal discovery with Michael Kors.  *Id.* at ¶ 27.   Class Counsel's review of the discovery enabled it counsel to gain an understanding of the evidence related to central questions in the case, and prepared it for well-informed settlement negotiations.  *Id*. Accordingly, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them.  *Id.*

Furthermore, the Parties engaged in a full day formal mediation before an experienced and respected mediator, Professor Eric Green.  Joint Decl. ¶ 28; *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440, *14-15 (S.D.N.Y. Nov. 8, 2006) (holding that mediator's "participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length"); *Park*, 2008 U.S. Dist. LEXIS 84551 at *6 (granting preliminary approval in part because settlement negotiations were facilitated by former judge).

### 2.   The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable.

Application of facts to the *Grinnell* factors supports a preliminary determination that the Settlement falls within the "range of reason" such that notice to the Settlement Class and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

### a.    Complexity, Expense, and Likely Duration of the Litigation.

As an initial matter, it is common knowledge that "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 174.  This case is no exception, with tens of thousands of members of the Settlement Class. By reaching a favorable settlement prior to dispositive motions or trial, the Parties seek to avoid significant expense and delay, and instead ensure recovery for the Settlement Class.  Joint Decl. ¶ 29.

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, individual cases would be impracticable.   Joint Decl. ¶ 30.   Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.  *Id.*  There is no doubt that continued litigation here would be difficult, expensive, and time consuming.  *Id.*  Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit Court of appeals.  *Id.  See also In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440 at *15 (noting that "[t]he expense and delay of continued litigation could be substantial"); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives to that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions,

and at trial.  Joint Decl. ¶ 31.  Experts in the fields of retail and marketing may also be necessary.  *Id.*  This consideration militates heavily in favor of the Settlement.  *See In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840 at *4 (noting that a "high likelihood of significant expenditure on experts . . . weigh in favor of preliminary approval"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

The Settlement provides immediate and substantial relief to tens of thousands of Michael Kors customers.  Joint Decl. ¶ 32.  The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.  *Id.*

### b.    The Reaction of the Class to the Settlement.

Since no notice has been sent, consideration of this factor is premature.  *See In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840 at *5.

### c.    The Stage of the Proceedings and Amount of Discovery.

"To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 176 (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982).  "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make … an appraisal' of the Settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 176 (quoting *Plummer*, 668 F.2d at 660).  *See also Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 U.S. Dist. LEXIS 650, at * 7 (S.D.N.Y. Jan. 28, 1999).  Additionally, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts

helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

Here, Class Counsel conducted in-depth interviews with Plaintiffs prior to filing the instant action, and also spoke to employees about the pricing.  Joint Decl. ¶ 34.  In addition, Class Counsel propounded and received responses to formal written discovery, including Interrogatories, Requests for Production and Requests for Admissions.  Further, Class Counsel conducted informal discovery, and obtained and reviewed with its experts damage data produced by Michael Kors.  *Id.* at ¶ 35.  The damage data included the evaluation of sales data and pricing formulas for the Class Period as it relates to the products in questions.  *Id.*  From those figures, the Parties were able to determine the range of damages under the applicable damage models.  *See Ballinger v. Advance Magazine Publrs., Inc.*, No. 13 Civ. 4036 (HBP), 2014 U.S. Dist. LEXIS 179538, *4-5 (S.D.N.Y. Dec. 29, 2014) (noting that although settling before depositions were taken, "[b]oth sides were sufficiently familiar with the facts to make an intelligent decision concerning the merits of the settlement).  Accordingly, the record provides sufficient information for this Court to determine that "the parties had adequate information about their claims."  *In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840 at *5.

### d.       *The Risks of Establishing Liability and Damages.*

"In assessing the risk of establishing liability, the Court must balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840 at *5 (citing *Grinnell*, 495 F.2d at 463).  While Plaintiffs believe that they could ultimately establish Michael Kors' liability, to do so would require significant factual development.  Joint Decl. ¶ 36.  For example, in similar outlet litigation, the defendants have

argued that the comparative discount pricing language contained on the price tags at issue would not lead a reasonable consumer to believe that the product in question was previously sold at a higher price. *Id.* As such, there could be no violations under California law for making an unlawful price comparison. *Id.* Although the price tags at issue in this case contained representations regarding purported discounts from the products' MSRP's, and not comparative discounts, the threshold issue of whether consumers would be deceived by such language remained a significant obstacle Plaintiffs would have to overcome in order to move forward with the prosecution of their case. *Id.* Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. *Id.* at ¶ 37. As this Court has previously recognized, "[l]iability is never automatic," and a settlement of $4,875.00 in cash and the practice changes described above represents a significant recovery. *Park*, 2008 U.S. Dist. LEXIS 84551 at *9.

In addition, "[p]roving damages in this action would have been extremely complicated and would almost certainly require significant expert testimony and analysis." *Park*, 2008 U.S. Dist. LEXIS 84551 at *9. Indeed, Plaintiffs retained two experts – an economics professor and marketing expert – to establish the price premium members of the Settlement Class paid as a result of Michael Kors' MSRP misrepresentation. Joint Decl. ¶ 38. Although Plaintiffs are confident that the calculation of this price premium and other alternative methods would provide evidence sufficient to establish the amount of damages sustained by members of the Settlement Class, Plaintiffs are mindful of the fact that courts in arguably similar cases have overturned damage awards based on the insufficiency of such evidence. *Id.* Thus, Plaintiffs faced the risk

of a non-monetary recovery for members of the Settlement Class, despite this Court's finding of Michael Kors' liability. *Id.*

> ### e.      *The Risks of Maintaining the Class Action through Trial.*

The risks of maintaining this action as a class action through trial provides additional support to Plaintiffs' position that the Settlement should be approved.  Michael Kors would undoubtedly have argued that individual issues predominate over common issues.  Joint Decl. ¶ 39.  In addition, like defendants have argued in other consumer class actions, Michael Kors would have raised issues pertaining to the ascertainability of the Settlement Class in light of the fact that many consumers do not retain receipts for the products they have purchased.  *Id.* at ¶ 40.  While Plaintiffs acknowledge that there are some burdens to easily identifying all members of the Settlement Class, they maintain that consistent with prior rulings from this Court, the retention of receipts is not an essential elements for the management of this class action, or for establishing proof of injury or damages.  *Id.  See, e.g., Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 566-67 (S.D.N.Y. 2014); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407-08 (S.D.N.Y. 2015).  Here, the proposed Settlement Class consisting of United States consumers who purchased products from Michael Kors outlet stores containing the MSRP claim is sufficiently specific to satisfy the implied ascertainability requirement of Rule 23.  *Id.* at 407; Joint Decl. ¶ 40.  Notwithstanding, even assuming that Plaintiffs were successful in certifying a class, there is a risk that Michael Kors would ask the Court to reconsider or amend the certification decision. *Park*, 2008 U.S. Dist. LEXIS 84551 at *9; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) ("A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable.").

f.      *The Ability of Defendant to Withstand a Greater Judgment.*

While neither Plaintiffs nor their counsel have knowledge as to this factor, conceivably,

Michael Kors could withstand a greater judgment for an amount significantly greater than the

Settlement.  "Nonetheless, the Second Circuit has held that this factor is not dispositive and need

not affect the conclusion that the settlement is within the range of reasonableness."  *In re Warner*

*Chilcott Ltd.*, 2008 U.S. Dist. LEXIS 99840 at *7 (citing *D'Amato v. Deutsche Bank*, 236 F.3d

78, 86 (2d Cir. 2001)); *In re Austrian & German Holocaust Litig.*, 80 F. Supp. 2d at 179 n.9

("[D]efendants' ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."); *accord Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y.

2005).

g.      *The Range of Reasonableness of the Settlement Fund in Light of*
        *the Best Possible Recovery and the Attendant Risks of Litigation.*

With regard to these factors, the Court must "see whether the settlement 'falls below the

lowest point in the range of reasonableness."  *Ballinger*, 2014 U.S. Dist. LEXIS 179538 at *7

(quoting *In re Gache*, 164 F.3d 617 (2d Cir. 1988)).  "Determining whether a settlement is

reasonable 'is not susceptible of a mathematical equation yielding a particular sum."  *In re*

*Austrian & German Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken Sec.*

*Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)).  "The weighing of a claim against compensation

cannot be . . . exact. Nor should it be, since an exact judicial determination of the values in issue

would defeat the purpose of compromising the claim . . . ."  *In re Austrian & German Holocaust*

*Litig.*, 80 F. Supp. 2d at 178 (quoting *Air Line Pilots Assoc. v. American Nat'l Bank and Trust*

*Co. of Chicago*, 156 B.R. 414 (S.D.N.Y. 1993)).  "The adequacy of the amount offered should be

judged 'in light of the strengths and weaknesses of the plaintiff[s'] case."  *In re Austrian &*

*German Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Med. X-Ray*, No. 93 Civ. 5904, 1998 U.S. Dist. LEXIS 14888, *15 (E.D.N.Y. Aug. 7, 1998)).

There has been resistance from other courts to allowing cases such as this one to withstand a motion to dismiss under the applicable California laws, suggesting that liability in this case is not certain.  Joint Decl. ¶ 43.  Also given the difficulties in establishing damages, Plaintiffs are unable to estimate with any certainty the best possible recovery for members of the Settlement Class at this stage of the litigation.  *Id.*  However, as demonstrated above, establishing damages would be a difficult and expensive task.  *Id.* at ¶ 44.  The law establishing a proper damages model to apply to outlet store false pricing litigation is still evolving.  In addition, "litigation through trial and appeal of this case would be lengthy and expensive, and would subject Plaintiffs' claims to a number of risks pertaining to liability.  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 178.  On the other hand, if approved, Plaintiffs and members of the Settlement Class are assured recovery of $4.875 million in cash, in addition to the benefit of significant practice changes, which will prevent future damages based on the practices at issue in this lawsuit.  Joint Decl. ¶ 45.  "Given these facts, the Court [should find] that the Settlement falls within the range of reasonableness."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 178.

C.    **Certification of the Settlement Class is Appropriate.**

For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement Class defined above, and in paragraph 29 of the Agreement.  However, "[b]efore certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23(a) and (b) have been met."  *Lizondro-Garcia*, 300 F.R.D. at 174 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006)).  Rule 23(a) requires

that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that: questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

"The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208-09 (2d Cir. 1972)).  *See also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).  Notwithstanding, "class certification should not be granted unless, after a 'rigorous analysis,' the court is satisfied that Rule 23's requirements have been met."  *Lizondro-Garcia*, 300 F.R.D. at 174 (citing *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010)).  "Doubts concerning the propriety of class certification should be resolved in favor of class certification."  *Lizondro-Garcia*, 300 F.R.D. at 174 (citing *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013)).

### 1.   Numerosity.

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Rule 23(a)(1)'s numerosity requirement is presumed satisfied if there are 40 class members."  *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, *28 (S.D.N.Y. July 15, 2014) (citing *Consol. Rail*

*Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 2005)).  *See also* 1 Newberg on Class Actions 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable").   Plaintiffs easily satisfy the numerosity requirement as there are tens of thousands of members of the Settlement Class.  Joint Decl. ¶ 47.

>        2.        **Commonality.**

"A party seeking certification must show 'there are questions of law or fact common to the class."  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist LEXIS 96457 at *28 (quoting Fed. R. Civ. P. 23(a)(2)).  "Class claims 'must depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *29 (quoting *Wal-Mart Stores Inc. v Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011)).  Accordingly, the Court must assess whether the common questions are capable of "generate[ing] common answers apt to drive the resolution of the litigation."  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *29 (quoting *Wal-Mart Stores*, 131 S. Ct. at 2551).  "Courts have generally construed the commonality requirement liberally and require that only one issue be common to all class members."  *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

Here, the commonality requirement is readily satisfied.  Plaintiffs and members of the Settlement Class all bring identical claims arising from Michael Kors' labeling and marketing of merchandise that it sells at its company-owned outlet stores.  Joint Decl. ¶ 48.  Specifically, Plaintiffs and members of the Settlement Class claim that the manner in which Michael Kors

labels its price tags deceived them into believing they were purchasing products at a discounted price.  *Id.*  Accordingly, the overarching questions are whether Michael Kors used false price representations and falsely advertised price discounts on its merchandize sold at Kors Outlet, and whether such representations constitute a violation of California law.  These questions "will be determined on a classwide basis without regard for evidence pertaining to individual class members."  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *29.

### 3.      Typicality.

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal argument to prove the defendant's liability.'"  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *30 (quoting *Marisol*, 126 F.3d at 376) (citation omitted).  "The commonality and typicality requirements tend to merge into one another."  *Id.*  Thus, "'[s]ince the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.'"  *Id.* (quoting *Bolanos v. Norweigen Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)).  Accordingly, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id*. (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Plaintiffs' claims are typical of the members of the Settlement Class' claims because they were subjected to the same Michael Kors advertising and marketing practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by

the Settlement.  Joint Decl. ¶ 49.  *See In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *30 (holding typicality requirement met where the claims of the named plaintiffs and class members "ar[o]se out of the same course of events" and were similarly affected by "[t]he same unlawful conduct").

### 4.    Adequacy.

"Adequacy requires determining whether '1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experience and able to conduct the litigation.'"  *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *31 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  "'The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class.'"  *Id.* (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008)).

As set forth above, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of members of the Settlement Class, because Plaintiffs and members of the Settlement Class have the same interest in the relief afforded by the Settlement, and there is no evidence that Plaintiffs and members of the Settlement Class have divergent interests.  Joint Decl. ¶ 50. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  *Id.*  Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.  *Id.*

### 5.    Predominance.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "'Class-wide issues predominate of resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial that the issues subject only to individualized proof.'" *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *32 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Joint Decl. ¶ 51. As stated above, the central issue in this litigation is whether Michael Kors engaged in a policy and practice of misrepresenting the existence, nature and amount of price discounts on products manufactured exclusively for its outlet stores. Because Michael Kors' policies and practices applied to all members of the Settlement Class, questions regarding the legality of those policies "are about the most perfect questions for class treatment." *Inglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). *See also Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 1010) ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited.") (internal citation omitted).

### 6.    Superiority.

"In determining whether 'a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy,' a court must consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

*In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *32 (quoting Fed. R. Civ. P. 23(b)(3)).

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.   Joint Decl. ¶ 52.   *See In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *32.   In addition, whether the case would be manageable as a class action at trial is "irrelevant in the context of a settlement class."   *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *32 (quoting *Amchem*, 521 U.S. at 620) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial.") (internal citation omitted). Further, "there are no likely difficulties is managing the Settlement."   *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *32.   Accordingly, this Settlement is "a superior method for disposing of this controversy." *Id.*

### D.   **Appointment of Class Counsel.**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must . . . appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).   In appointing class counsel, the Court must consider the following factors:

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *34 (quoting

Fed. R. Civ. P. 23(g)(1)(A)).

As set forth above, Class Counsel has significant experience handling class actions, and in particular, the claims asserted in this action as a result of its prosecution of similar actions throughout the country. This experience, along with the thorough investigation and analysis of Plaintiffs' claims that was conducted both prior to and after the filing of this action, has enabled Class Counsel to obtain a strong knowledge of the law applicable to the claims asserted herein. Since the inception of this case, Class Counsel has demonstrated its commitment and financial ability to represent Plaintiffs and members of the Settlement Class. Accordingly, Class Counsel should be appointed as class counsel. *See In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 at *35; *Lizondro-Garcia*, 300 F.R.D. at 178.

**E.**     **Adequacy of the Proposed Notice.**

"Fed. R. Civ. P. 23(e)(1)(B) provides that, in the event of a settlement of a class action, '[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement.'" *In re Warner Chilcott Ltd.*, 2008 U.S. Dist. 99840 at *7. "To satisfy due process, the notice must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at *7 (quoting *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996)). "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as Co-Lead Counsel acted reasonably in selecting means likely to inform persons affected." *In re Warner Chilcott*

*Ltd.*, 2008 U.S. Dist. 99840 at *7 (quoting *In re Prudential*, 164 F.R.D. at 368). To satisfy the

standards of Rule 23 and due process, the notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice Program satisfies all of these criteria. As recited in the Settlement,

the Notice will properly inform members of the Settlement Class of the substantive terms of the

Settlement. It will advise members of the Settlement Class of their options for opting-out of or

objecting to the Settlement, and how to obtain additional information about the Settlement. The

Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the

requirements of constitutional due process. Joint Decl. ¶ 18. Therefore, the Court should

approve the Notice Program and the form and content of the Notices and Claim Verification

Form attached to the Agreement as Exhibits 1-3.

### F. **The Plan of Allocation.**

"To warrant approval, the plan of allocation must meet the standards by which the . . .

settlement was scrutinized -- namely, it must be fair and adequate." *In re Warner Chilcott Ltd.*

*Secs. Litig.*, No. 06 Civ. 11515 (WHP), 2009 U.S. Dist. LEXIS 58843, *7 (S.D.N.Y. July 10,

2009) (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).

Accordingly, "[a]n allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent class counsel." *In re Warner Chilcott*, 2009 U.S.

Dist. LEXIS 58843 at *7 (quoting *Maley*, 186 F. Supp. 2d at 367).

The proposed plan of allocation provides for a *pro rata* distribution of the Net Settlement Fund, based on a tiered recovery system, to members of the Settlement Class who submit a valid Claim Verification Form ("Valid Class Members"), a copy of which is attached to the Agreement as Exhibit 3.  Joint Decl. ¶ 22.  The tiered recovery system is based on the amount of qualifying products purchased by Valid Class Members who can provide proof of their purchase, and thus, allocates a recovery that more closely represents such Valid Class Members' individual damages.  *Id.*  The plan also takes into account the fact that many Valid Class Members will have not retained proof of their purchase, and allows such Settlement Class Members to nonetheless share in the recovery.  *Id.*  No portion of the Net Settlement Fund will revert back to Michael Kors.  *Id.*

## G.       The Court Should Schedule a Final Approval Hearing.

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order and Final Judgment under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve the request for Service Awards to the Plaintiffs.  Plaintiffs request that the Court schedule the Final Approval hearing no sooner than the week of November 1, 2015 (if convenient for the Court).  Plaintiffs and Class Counsel will file their motion for Final Approval, Fee Application and request for Service Awards for Plaintiffs no later than sixty (60) days prior to the Final Approval Hearing.

**IV.**    <u>**CONCLUSION**</u>

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure and appoint Tress Gattinella and Kristina Lengyel as class representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices, attached to the Agreement as Exhibits 1 and 2; (5) approve the claims procedure and the Claim Verification Form attached to the Agreement as Exhibit 3; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) stay the Action against Michael Kors pending Final Approval of the Settlement; (8) appoint as Class Counsel the law firms listed in paragraph 7 of the Agreement; and (9) schedule a Final Approval Hearing no sooner than the week of November 1, 2015.

For the Court's convenience, Plaintiffs attach as *Exhibit C* a Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

Dated: June 12, 2015.                     Respectfully submitted,

                                          **KOPELOWITZ OSTROW P.A.**

                                          By:     <u>*/s/ Jason H. Alperstein*</u>
                                                  Jeffrey M. Ostrow, Esq. (*Pro Hac Vice*)
                                                  ostrow@kolawyers.com
                                                  Jason Alperstein, Esq.
                                                  SDNY Bar No.: JA1209
                                                  alperstein@kolawyers.com
                                                  Scott A. Adelsberg (*Pro Hac Vice*)
                                                  edelsberg@kolawyers.com
                                                  200 S.W. First Avenue, 12th Floor
                                                  Fort Lauderdale, FL 33301
                                                  Telephone: (954) 525-4100
                                                  Facsimile: (954) 525-4300

Wayne S. Kreger, Esq.
SDNY Bar No.: WK2868
wayne@kregerlaw.com
**LAW OFFICES OF WAYNE KREGER**
303 Fifth Avenue, Suite 1201
New York, New York 10016
Telephone: (212) 956-2136
Facsimile: (212) 956-2137

Hassan A. Zavareei, Esq.  (*Pro Hac Vice*)
hzavareei@tzlegal.com
Jeffrey D. Kaliel (*Pro Hac Vice*)
jkaliel@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 L Street, NW
Suite 808
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

## CERTIFICATE OF SERVICE

I certify that on this 12th day of June, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of the filing to the attorneys on that system.

*/s/ Jason H. Alperstein*
Jason H. Alperstein
SDNY Bar No.: JA1209