# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TRESSA GATTINELLA, and
KRISTIN LENGYEL each individually and on behalf    No. 14 Civ. 5731 (WHP)
of all others similarly situated,

                          *Plaintiffs*,

            -against-

MICHAEL KORS (USA), INC.; MICHAEL KORS,
L.L.C.; MICHAEL KORS RETAIL, INC.; and
MICHAEL KORS STORES, L.L.C.,

                          *Defendants*.
------------------------------------------------------------------------x

## JOINT DECLARATION OF JEFFREY M. OSTROW, WAYNE S. KREGER, AND HASSAN A. ZAVAREEI IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Jeffrey M. Ostrow, Wayne S. Kreger and Hassan A. Zavareei declare as follows:

      1.      We are Class Counsel for Plaintiffs and the proposed Settlement Class in the action ("Action") against Michael Kors (USA), Inc., Michael Kors, L.L.C., Michael Kors Retail, Inc., and Michael Kors Stores, L.L.C. (collectively "Michael Kors").[1]  We submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.  Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

      2.      After litigation and settlement negotiations, Plaintiffs, Class Counsel and Michael Kors entered into a Settlement Agreement and Release ("Settlement" or "Agreement") under

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

which Michael Kors has agreed to: (i) pay $4,875,000.00 in cash to create a common fund for the benefit of the Settlement Class; and (ii) implement significant practice changes, including ceasing the very practice at the heart of this Action.  Under the Settlement, members of the Settlement Class need only submit online or by mail a Claim Verification Form verifying that they purchased Michael Kors Outlet Products during the Class Period in order to receive a distribution from the Net Settlement Fund.

3. The Action involved sharply opposed positions on several fundamental legal and factual issues.  Plaintiffs maintain that the claims asserted in the Action are meritorious; that they would establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment recovered in favor of Plaintiffs and the Settlement Class Members would be affirmed on an appeal.  Plaintiffs' ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures.  Conversely, Michael Kors' success at any one of these junctures could or would have spelled defeat for Plaintiffs and the Settlement Class.  Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings.

4. In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash compensation and other valuable relief.

**A.     Background of the Litigation and Procedural History.**

5. On July 25, 2014, Plaintiff Gattinella filed a Class Action Complaint in this Court seeking monetary damages, restitution and declaratory relief from Michael Kors for its false deceptive labeling and marketing of the merchandise it sells at Kors Outlet.  Plaintiffs allege that in reliance on Michael Kors' misrepresentations regarding the existence, nature and amount of

price discounts on Kors Outlet Products, they purchased Kors Outlet Products, and as a result therefore damaged.

6. On September 25, 2014, Michael Kors filed its Answer, denying liability for Plaintiffs' claims. Michael Kors defended its conduct by, *inter alia*, arguing that the "suggested" retail price on Kors Outlet Products did not constitute a representation as to whether those Products were, in fact, offered for sale at those "suggested" prices, and that it complied with applicable federal and state laws, regulations and rules. Furthermore, Michael Kors advanced a medley of other defenses.

7. On December 24, 2014, Plaintiff Gattinella filed a Second Amended Complaint adding Plaintiff Lengyel. Thereafter, the Parties engaged in formal written discovery, including document requests, interrogatories and requests for admission.

8. Beginning in early 2015, the Parties engaged in preliminary settlement discussions, which involved Michael Kors producing informal damage related data and information. On February 11, 2015, the Parties conducted an informal settlement conference in New York. On April 2, 2015, the Parties participated in a formal mediation session with Professor Eric Green in New York City. In advance of the mediation, and aside from responding to Plaintiffs' formal written discovery, Michael Kors produced specific additional data and class related information. This data and class related information included nationwide sales numbers for Kors Outlet Products, internal procedures related to setting prices for Kors Outlet Products and a description of customer databases maintained by Michael Kors.

9. After the mediation, the Parties reached an agreement in principle and signed a term sheet, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval, the Parties' good faith intention to fully,

finally and forever resolve, discharge and release all rights and claims of Plaintiffs and the Settlement Class Members in exchange for Michael Kors' Agreement to; (a) pay the sum of Four Million Eight Hundred Seventy-Five Thousand Dollars ($4,875,000.00) to create a common fund for the benefit of the Settlement Class; and (b) modify its sales practices to change the manner and method in which it markets and labels its price tags for items in its outlet stores.

10. On April 8, 2015, the Parties filed a Notice of Settlement with the Court, and on June 12, 2015, the Parties fully executed the Agreement.

### B. Class Counsel's Investigation.

11. Class Counsel spent many hours investigating the claims of several potential plaintiffs against Michael Kors. Prior to filing suit, Class Counsel visited outlet stores, spoke to Michael Kors employees, and interviewed a number of customers and potential plaintiffs to gather information about Michael Kors' conduct and its impact upon consumers. This information was essential to Class Counsel's ability to understand the nature of the conduct, the language on the price tags at issue, and potential relief and remedies.

12. Class Counsel expended significant resources researching and developing the legal claims at issue. After filing suit, Class Counsel also crafted and served document requests, interrogatories and requests for admission with an eye toward class certification, summary judgment and trial. Additionally, Class Counsel spent an enormous amount of time researching, reviewing and analyzing Michael Kors' outlet revenue and industry trends relating to pricing. Prior to Settlement, Class Counsel and Plaintiffs' expert analyzed the discovery and other data provided by Michael Kors, and researched case law, to create damage models and to formulate a range of alleged damages in this case.

### C. The Relief for the Benefit of the Settlement Class.

13. The Settlement consists of a $4.875 million cash Settlement Fund to be distributed to Settlement Class Members. The Settlement requires Michael Kors to deposit into an Escrow Account the full amount of the Settlement following Preliminary Approval. The Settlement Fund will be used to pay the costs of class Notice and Settlement Administration, attorneys' fees, costs and expenses, the class representatives' Service Awards sought in this case, and, most importantly, the distributions to Settlement Class Members.

14. Additionally, upon Final Approval, unless Michael Kors elects to do it sooner, Michael Kors agrees to modify its sales practices to change the manner and method of how it presents pricing on price tags of Michael Kors Outlet Products. Specifically, Michael Kors shall: (a) cease the use of the acronym "MSRP" (Manufacturer Suggested Retail Prices) and will replace it with the word "Value" on price tags of items sold at Michael Kors Outlet Stores; and (b) display signage in the Michael Kors Outlet Stores that explains the meaning of "Value" to customers.

### D. Class Notice.

15. The Notice Program in this Settlement is designed to provide the best notice practicable. The Notice Program is reasonably calculated under the circumstances to apprise members of the Settlement Class, among other information: a description of the material terms of the Settlement, the date by which persons in the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class, the date by which persons in the Settlement Class may object to the Settlement, the date upon which the Final Approval Hearing will occur, and the address of the Settlement Website at which persons in the Settlement Class may access the Agreement and other related documents and information. The Notice and Notice Program

constitute sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

16. The Notice Program is comprised of two parts: (1) publication notice ("Published Notice"); and (2) written long-form notice containing more detail than the Published Notice ("Long Form Notice") that will be available on the Settlement website (www.KorsOutletSettlement.com) and via U.S. mail upon request. In addition, Notice will be provided through targeted Internet banner advertising.

17. Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which members of the Settlement may exclude themselves from or opt-out of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date of the Final Approval Hearing; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other related documents and information.

18. The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process.

  **E.**   **Claims Process.**

19. To be eligible to participant in the Settlement as a Settlement Class Member, claimants must submit a Claim Verification Form online or by mail to the Settlement and Notice Administrator. A copy of the Claim Verification Form is attached as Exhibit 3 to the Agreement. The Notice Program will direct claimants to the Settlement Website to provide instructions on how to complete and submit the Claim Verification Form. At the request of a Settlement Class Member, the Settlement and Notice Administrator will send a hard copy of the form to the

claimant's address.  The Settlement Class Member shall return the Claim Verification Form to the mailing address identified on the Claim Verification Form, and shall be responsible for the cost of postage to deliver the Claim Verification Form to the Settlement and Notice Administrator.

20. Once the forms are submitted online or by mail, the Settlement and Notice Administrator will be responsible for reviewing the forms for completeness.  Should a Claim Verification Form be valid and complete, the claimant will be added to the Settlement Class Member list.  If a Claim Verification Form is invalid or incomplete, the Settlement and Notice Administrator will send written verification to the claimant that the form is rejected.  The claimant will have one more opportunity to submit a corrected completed form.

21. All Claim Verification Forms, whether the initial or second submission, must be submitted online or postmarked no later than 45 days after the entry of the Final Approval Order.

F. **The Plan of Allocation.**

22. The proposed plan of allocation provides for a *pro rata* distribution of the Net Settlement Fund, based on a tiered recovery system, to Valid Class Members" a copy of which is attached to the Agreement as Exhibit 3. The tiered recovery system is based on the amount of qualifying products purchased by Valid Class Members who can provide proof of their purchase, and thus, allocates a recovery that more closely represents such Valid Class Members' individual damages.  The plan also takes into account the fact that many Valid Class Members will have not retained proof of their purchase, and allows such Settlement Class Members to nonetheless share in the recovery.  No portion of the Net Settlement Fund will revert back to Michael Kors.

7

G. **Service Awards, Attorneys' Fees and Costs.**

23. Class Counsel will seek Service Awards of $5,000 for each of the named Plaintiffs. If the Court approves them, the total Service Awards of $10,000, will be approximately 0.2% of the Settlement Fund. The Service Awards will be paid from the Settlement Fund, and will be in addition to the distributions the Plaintiffs will be entitled to under the terms of the Settlement. *Id*. These awards will compensate the representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against Michael Kors. Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; and (3) participating in conferences with Class Counsel. In so doing, the Plaintiffs were integral to the case. Michael Kors does not object to Class Counsel's request for Service Awards for the Class Representatives.

24. Michael Kors will not oppose Class Counsel will request attorneys' fees of up to thirty percent (30%) of the Settlement Fund, as well as reimbursement of costs and expenses incurred in connection with the Action. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.

H. **Considerations Supporting Settlement.**

  1. **This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.**

25. The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with the motions to dismiss, contested class certification proceedings and possible

8

interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

26. The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.

27. As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in both informal and formal discovery with Michael Kors. Class Counsel's review of the discovery enabled it counsel to gain an understanding of the evidence related to central questions in the case, and prepared it for well-informed settlement negotiations. Accordingly, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them.

28. Furthermore, the Parties engaged in a full day formal mediation before an experienced and respected mediator, Professor Eric Green.

### 2. Complexity, Expense, and Likely Duration of the Litigation.

29. By reaching a favorable settlement prior to dispositive motions or trial, the Parties seek to avoid significant expense and delay, and instead ensure recovery for the Settlement Class.

30. The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, individual cases would be impracticable. Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in

additional expense and delay. There is no doubt that continued litigation here would be difficult, expensive, and time consuming. Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit Court of appeals.

31. One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial. Experts in the fields of retail and marketing may also be necessary. This consideration militates heavily in favor of the Settlement.

32. The Settlement provides immediate and substantial relief to tens of thousands of Michael Kors customers. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

### 3. The Reaction of the Class to the Settlement.

33. Since no notice has been sent, consideration of this factor is premature.

### 4. The Stage of the Proceedings and Amount of Discovery.

34. Class Counsel conducted in-depth interviews with Plaintiffs prior to filing the instant action, and also spoke to employees about the pricing. In addition, Class Counsel propounded and received responses to formal written discovery, including Interrogatories, Requests for Production and Requests for Admissions.

35. Further, Class Counsel conducted informal discovery, and obtained and reviewed with its experts damage data produced by Michael Kors. The damage data included the evaluation of sales data and pricing formulas for the Class Period as it relates to the products in questions. From those figures, the Parties were able to determine the range of damages under the applicable damage models.

### 5. The Risks of Establishing Liability and Damages.

36. While Plaintiffs believe that they could ultimately establish Michael Kors' liability, to do so would require significant factual development. For example, in similar outlet litigation, the defendants have argued that the comparative discount pricing language contained on the price tags at issue would not lead a reasonable consumer to believe that the product in question was previously sold at a higher price. As such, there could be no violations under California law for making an unlawful price comparison. Although the price tags at issue in this case contained representations regarding purported discounts from the products' MSRP's, and not comparative discounts, the threshold issue of whether consumers would be deceived by such language remained a significant obstacle Plaintiffs would have to overcome in order to move forward with the prosecution of their case.

37. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. A settlement of $4,875.00 in cash and the practice changes described above represents a significant recovery.

38. In addition, proving damages in this action would have been extremely complicated and would almost certainly require significant expert testimony and analysis. Indeed, Plaintiffs retained two experts – an economics professor and marketing expert – to establish the price premium members of the Settlement Class paid as a result of Michael Kors' MSRP misrepresentation. Although Plaintiffs are confident that the calculation of this price premium and other alternative methods would provide evidence sufficient to establish the amount of damages sustained by members of the Settlement Class, Plaintiffs are mindful of the fact that courts in arguably similar cases have overturned damage awards based on the

11

insufficiency of such evidence. Thus, Plaintiffs faced the risk of a non-monetary recovery for members of the Settlement Class, despite this Court's finding of Michael Kors' liability.

### 6. The Risks of Maintaining the Class Action through Trial.

39. The risks of maintaining this action as a class action through trial provides additional support to Plaintiffs' position that the Settlement should be approved. Michael Kors would undoubtedly have argued that individual issues predominate over common issues.

40. In addition, like defendants have argued in other consumer class actions, Michael Kors would have raised issues pertaining to the ascertainability of the Settlement Class in light of the fact that many consumers do not retain receipts for the products they have purchased. While Plaintiffs acknowledge that there are some burdens to easily identifying all members of the Settlement Class, they maintain that consistent with prior rulings from this Court, the retention of receipts is not an essential elements for the management of this class action, or for establishing proof of injury or damages. Here, the proposed Settlement Class consisting of United States consumers who purchased products from Michael Kors outlet stores containing the MSRP claim is sufficiently specific to satisfy the implied ascertainability requirement of Rule 23.

41. Notwithstanding, even assuming that Plaintiffs were successful in certifying a class, there is a risk that Michael Kors would ask the Court to reconsider or amend the certification decision.

### 7. The Ability of Defendants to Withstand a Great Judgment.

42. While neither Plaintiffs nor their counsel have knowledge as to this factor, conceivably, Michael Kors could withstand a greater judgment for an amount significantly greater than the Settlement.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation.

43. There has been resistance from other courts to allowing cases such as this one to withstand a motion to dismiss under the applicable California laws, suggesting that liability in this case is not certain. Also given the difficulties in establishing damages, Plaintiffs are unable to estimate with any certainty the best possible recovery for members of the Settlement Class at this stage of the litigation.

44. However, as demonstrated above, establishing damages would be a difficult and expensive task. The law establishing a proper damages model to apply to outlet store false pricing litigation is still evolving. In addition, litigation through trial and appeal of this case would be lengthy and expensive, and would subject Plaintiffs' claims to a number of risks pertaining to liability.

45. On the other hand, if approved, Plaintiffs and members of the Settlement Class are assured recovery of $4.875 million in cash, in addition to the benefit of significant practice changes, which will prevent future damages based on the practices at issue in this lawsuit.

### I. Class Certification for Settlement Purposes.

46. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

13

47. The numerosity requirement of Rule 23(a) is satisfied because there are tens of thousands of members of the Settlement Class, and joinder of all such persons is impracticable.

48. The commonality requirement is satisfied because Plaintiffs and members of the Settlement Class all bring identical claims arising from Michael Kors' labeling and marketing of merchandise that it sells at its company-owned outlet stores. Specifically, Plaintiffs and members of the Settlement Class claim that the manner in which Michael Kors' labels its price tags deceived them into believing they were purchasing products at a discounted price. Accordingly, the overarching questions are whether Michael Kors used false price representations and falsely advertised price discounts on its merchandize sold at Kors Outlet, and whether such representations constitute a violation of California law.

49. Plaintiffs' claims are typical of the members of the Settlement Class' claims because they were subjected to the same Michael Kors advertising and marketing practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by the Settlement.

50. Adequacy is established because Plaintiffs' interests are coextensive with, not antagonistic to, the interests of members of the Settlement Class, because Plaintiffs and members of the Settlement Class have the same interest in the relief afforded by the Settlement, and there is no evidence that Plaintiffs and members of the Settlement Class have divergent interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.

51.     Plaintiffs satisfy the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. As stated above, the central issue in this litigation is whether Michael Kors engaged in a policy and practice of misrepresenting the existence, nature and amount of price discounts on products manufactured exclusively for its outlet stores. Because Michael Kors' policies and practices applied to all members of the Settlement Class, questions regarding the legality of those policies are well-suited for class treatment.

52.     Moreover, class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida, on June 12, 2015.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow

I declare under penalty of perjury of the laws of the New York and the United States that the foregoing is true and correct, and that this declaration was executed in New York, New York, on June 12, 2015.

/s/ Wayne S. Kreger
Wayne S. Kreger

I declare under penalty of perjury of the laws Washington, D.C. and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C., on June 12, 2015.

/s/ Hassan A. Zavareei
Hassan A. Zavareei